Argued and submitted January 21, affirmed May 13, 2015

In the Matter of the Compensation of
Dalice L. Vukasin, Claimant.

Dalice L. VUKASIN,
*Petitioner,*

*v.*

LIBERTY NORTHWEST
INSURANCE CORPORATION
and Oregon Health & Sciences University (OHSU),
*Respondents.*

Workers' Compensation Board
1101233, 1002645; A153002

349 P3d 636

Donald E. Beer argued the cause for petitioner. With him on the briefs was Merkel & Associates.

Rebecca A. Watkins argued the cause for respondents. With her on the brief was Sather, Byerly & Holloway, LLP.

Before Lagesen, Presiding Judge, and Flynn, Judge, and De Muniz, Senior Judge.

LAGESEN, P. J.

## LAGESEN, P. J.

Claimant petitions for review of a decision of the Workers' Compensation Board (the board)[1] upholding respondent insurer's denial of compensability of medical services under ORS 656.245(1)(a). In particular, claimant seeks review of the board's determination that a 2009 ankle surgery was not compensably related to a 2000 workplace ankle injury; claimant also challenges the amount of her attorney-fee award. Because we conclude that substantial evidence supports the board's finding that claimant's surgery was not directed to any of her accepted conditions,[2] we affirm the order of the board. We reject claimant's challenge to the attorney-fee award without discussion.

On March 3, 2000, claimant sustained an ankle injury while at her job at Oregon Health & Sciences University (OHSU). As a result of that injury, OHSU's insurer ultimately accepted the following conditions: right distal tibiofibula sprain; synovitis; neuroma; fibular avulsion of the right lateral malleolus; right flexor hallucis longus tenosynovitis; and chronic tear of the right anterior talofibular ligament (ATFL). Although claimant was diagnosed with peroneal tendonitis on December 19, 2000, she did not request acceptance of that condition by the insurer.[3]

---

[1] The board adopted and affirmed the order of the administrative law judge (ALJ) without opinion; when we refer to the board's order, we are referring to the ALJ's order.

[2] As we elaborate further in the body of the opinion, claimant's theory before the board and on review is that her 2009 surgery was compensable because it treated conditions that, in claimant's view, were "accepted conditions" in connection with her 2000 workplace injury; claimant does not argue that those "accepted" conditions do not comprise the whole of her "compensable injury" resulting from the 2000 incident, or otherwise suggest that the board was required to analyze the compensability of the 2009 surgery under a different standard in the light of our recent decisions in *Brown v. SAIF*, 262 Or App 640, 325 P3d 834, *rev allowed*, 356 Or 397 (2014); *SAIF v. Carlos-Macias*, 262 Or App 629, 325 P3d 827 (2014); and *Easton v. SAIF*, 264 Or App 147, 331 P3d 1035 (2014). For that reason, the focus of this opinion is on whether the board erred in determining that the 2009 surgery did not treat the "accepted conditions" connected to the 2000 injury; it should not be understood to articulate a different legal standard for determining compensability than the standard articulated in the *Brown* line of cases.

[3] Claimant had presented with peroneal tendon pain on the date of her injury. Although an MRI scan of claimant's ankle taken on June 20, 2000, did not reveal peroneal tendonitis, she continued to experience peroneal tendon tenderness and pain into August 2000. Claimant was diagnosed with peroneal tendonitis on December 19, 2000, but that condition was not accepted by the insurer at that time.

Claimant was also diagnosed with, and requested acceptance of, chronic instability of the right ankle, but that claim was denied and the insurer's denial was upheld by an administrative law judge.

Almost a decade later, in 2009, claimant requested authorization for surgery. The insurer denied the authorization on the ground that the surgery was to address right ankle instability, a denied condition. Notwithstanding the insurer's denial, claimant underwent the surgery. Following the operation, claimant's surgeon diagnosed her with right ankle instability, peroneal tendonitis, cavus foot, and gastrocnemius equinus, and claimant requested that the insurer amend the acceptance to include the latter three conditions. Her post-acceptance claim was denied.

Claimant sought review, challenging both the insurer's denial of her post-acceptance claim for peroneal tendonitis[4] and the insurer's compensability denial of the 2009 surgery. For support, claimant relied on the opinions of two medical experts: Dr. Sauvain, claimant's treating physician since 2005; and Dr. Veri, who performed the 2009 surgery. The insurer relied largely on the expert testimony of Dr. Yodlowski and Dr. Woodward.

With respect to claimant's first challenge, the board found that the March 3, 2000, workplace injury was the major cause of claimant's peroneal tendonitis diagnosed on December 19, 2000. However, the board further found that the peroneal tendonitis identified during claimant's 2009 surgery was not the same peroneal tendonitis with which she was diagnosed in 2000. The board explained:

> "[T]he March 3, 2000 work accident was the major cause of peroneal tendonitis diagnosed on December 19, 2000. That pathology resolved. Claimant some time later developed a new peroneal tendonitis, perhaps as a result of the instability mechanism Dr. Veri identified."

---

[4] Claimant also challenged the insurer's denial of her post-acceptance claims for cavus foot and gastrocnemius equinus, but ultimately conceded that the medical evidence did not compensably link those conditions to her March 3, 2000, injury.

But, because claimant was obligated to prove only that the 2000 injury was a "sufficient cause of *an instance of* peroneal tendonitis," and because the board found that claimant had met that burden with respect to the peroneal tendonitis diagnosed in December 2000, it ruled that the insurer's denial of that condition must be set aside. (Emphasis added.)

With respect to her second challenge, claimant contended that the 2009 surgery was compensable because it included treatment of two accepted conditions: synovitis and an ATFL tear. The board rejected that challenge. It found that the synovitis treated by the 2009 surgery was not, as a factual matter, the synovitis that was accepted as a result of the 2000 injury. The board also found that the evidence was insufficient to persuade it that the surgery was related to the accepted ATFL tear. The board observed that Veri testified that his surgery addressed the "incompetence" of the ATFL by treating instability; he did not, however, testify that he treated an ATFL tear. The board noted that Veri's assertion that his surgery was related to claimant's 2000 injury was made in response to counsel's representation that "the right anterior talofibular ligament is already an accepted condition." The board also observed that the right ATFL is not, in itself, an accepted condition; the only accepted condition is a chronic ATFL *tear*. Accordingly, the board found that Veri's testimony "did not persuasively relate the need [for] surgery to" the ATFL tear accepted by the insurer as a result of claimant's 2000 injury.

Ultimately, the board found that the 2009 surgery was directed at right ankle instability—a denied condition—rather than any accepted condition. *See* ORS 656.245(1)(a) (medical services compensable for ordinary conditions "caused in material part by" a compensable injury). The board further found that none of the accepted conditions was the major contributing cause of the ankle instability to which the surgery was directed. *See id.* (medical services compensable for consequential or combined conditions "caused in major part by" a compensable injury). Based on those determinations, the board concluded that claimant had not met her burden of proving that the surgery was compensable. Accordingly, the board upheld the insurer's compensability denial. Claimant now seeks review of that order.

On review, claimant asserts that the board erred in upholding the insurer's compensability denial, on the grounds that (1) the board lacked legal authority to consider whether claimant's previously accepted conditions had "resolved" prior to her 2009 surgery, and (2) the order is not supported by substantial evidence. Claimant essentially argues that, because the 2009 surgery was for peroneal tendonitis, synovitis, and an ATFL condition, and because those conditions were accepted as a result of the 2000 injury, the insurer was *required* to conclude that the surgery was compensable, notwithstanding the evidence showing that, as a factual matter, the conditions treated by the surgery were not the ones caused by the 2000 injury.

The insurer responds that whether a causal relationship exists between a medical service and a compensable injury is a question of fact and nothing precludes the board from considering whether an accepted condition has resolved as part of that analysis. The insurer asks that the board's order be upheld, arguing that the board made a factual determination that the surgery was not for any accepted condition and that that determination is supported by substantial evidence in the record.

Compensability of medical services is controlled by ORS 656.245(1)(a), which provides that an insurer is responsible for services "for conditions caused in material part by" a compensable injury.[5] Whether claimant's 2009 surgery

---

[5] ORS 656.245(1)(a) provides, in full:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions *caused in material part* by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions *caused in major part* by the injury."

(Emphases added.) The first sentence of the statute governs the analysis for ordinary conditions, and the second sentence governs the analysis for consequential or combined conditions.

Here, as mentioned, the board found both that (1) the surgery was not for an accepted condition, and (2) none of the accepted conditions was the major cause of the consequential condition to which the surgery was directed. Because, in her opening brief, claimant challenges only the board's determination that the

was for a condition caused in "material part" by her 2000 workplace injury is a question of fact, *see SAIF v. Sprague,* 346 Or 661, 674-75, 217 P3d 644 (2009), and we review the board's compensability determination for substantial evidence, ORS 183.482(8)(c).

Here, the board found as fact that the conditions treated by the surgery were not the same conditions that had been accepted as a result of claimant's workplace injury, and that finding is supported by substantial evidence. First, Yodlowski offered her opinion that none of the conditions accepted as a result of claimant's 2000 injury would generally be a cause of the 2009 surgery, and the board permissibly found that the opinions of other experts connecting the surgery to the accepted conditions were weak.

Second, the evidence indicates that the peroneal tendonitis that resulted from claimant's 2000 injury had resolved itself by 2005, four years before the surgery at issue. Both parties' experts testified that MRI scans of claimant's ankle taken in 2005 did not reflect peroneal tendonitis. Claimant's surgeon, Veri, further testified that the 2000 peroneal tendonitis could have resolved and new peroneal tendonitis could have developed. From that evidence, the board permissibly inferred that the peroneal tendonitis treated by the 2009 surgery was not the same peroneal tendonitis accepted as a result of claimant's 2000 injury.

Third, the evidence indicates that the synovitis that resulted from claimant's 2000 injury had been removed in a prior surgery. There was evidence presented that, in 2001, claimant underwent a synovectomy, and Woodward and Yodlowski each submitted reports attesting that the synovitis accepted by the insurer was removed from claimant's ankle at that time. Following that procedure, neither claimant's treating physician nor a neutral medical arbiter diagnosed claimant with active synovitis. From that evidence,

surgery was not for an accepted condition—a determination controlled by the first sentence of ORS 656.245(1)(a)—our review is limited to that issue. *See Belgarde v. Linn,* 205 Or App 433, 438, 134 P3d 1082, *rev den,* 341 Or 197 (2006) ("We do not consider arguments for reversal of a trial court ruling raised for the first time in a reply brief[.]" (Citing *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 380-81, 823 P2d 956 (1991).).

which claimant's experts did not rebut, the board permissibly found that the synovitis treated by the 2009 surgery was not the same synovitis accepted as a result of claimant's 2000 injury.

Fourth, although the 2009 surgery involved treatment of claimant's ATFL, the evidence does not indicate that the procedure was directed at treating an ATFL *tear*— the particular *condition* accepted by claimant's insurer as a result of her 2000 injury. Claimant's surgeon testified that he addressed the "incompetence" of claimant's ATFL by performing reconstructive surgery, but he never asserted that he treated an ATFL tear. The ATFL tear, not the ATFL itself, was the accepted condition, and the board permissibly found that the 2009 surgery was not directed at the treatment of that condition.

Finally, there is no support for claimant's contention that, once conditions resulting from a workplace injury are accepted, any subsequent treatment of the claimant for conditions of the same type is compensable, even when the medical evidence demonstrates—as a factual matter—that the conditions caused by the injury have resolved or been cured. To the contrary, ORS 656.245(1)(a) only authorizes compensation for medical services for conditions that are, as a factual matter, causally related to a compensable workplace injury.

Affirmed.