Argued and submitted May 8, 2015, affirmed May 4, 2016

In the Matter of the Compensation of
Everett J. Long, Deceased, Claimant.

Maxine LONG,
*Petitioner,*

*v.*

SAIF CORPORATION;
and Thomsen Orchards, Inc.,
*Respondents.*

Workers' Compensation Board
1201992; A156417

372 P3d 610

J. R. Perkins, III, argued the cause and filed the brief for petitioner.

Julie Masters argued the cause and filed the brief for respondents.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## EGAN, J.

Claimant, the surviving spouse and statutory beneficiary of the deceased worker, Everett Long, seeks review of an order of the Workers' Compensation Board. The board affirmed a denial of Long's cardiac arrest claim, concluding that the medical evidence was not sufficient to establish that Long's employment conditions were the major contributing cause of his heart condition and that there was not clear and convincing evidence that the decedent's cardiac arrest arose out of and in the course and scope of employment in accordance with ORS 656.802(3)(d). Claimant argues that the opinion of SAIF's medical records reviewer was flawed and therefore the board's order lacks substantial reason. SAIF responds that the board properly evaluated the medical evidence and that there is substantial evidence to support the board's conclusion. The underlying facts are undisputed. We affirm.

We take the facts from the administrative law judge's (ALJ) findings as supplemented by the board. Long was 70 years old and had been working for the employer, Thomsen Orchards, Inc., for 35 years. On the day of his cardiac arrest, Long's coworker, Elisea, was cutting limbs on trees and pushing those limbs into a burn pile that rose about 15 feet in the air. While Elisea refueled his pruning implement, Long and Sandoval, another coworker, pulled up in a golf cart. Sandoval began cutting high branches and Long started pushing the branches into the pile with a tractor. Long expressed concern to Sandoval that the tractor had become stuck close to the fire and it might burn. Long was excited. He raised his voice and waved his arms. The workers drove the golf cart to retrieve a truck and some rope.

Sandoval mounted the tractor, Long pulled a Caterpillar into position, and Elisea secured the rope to the tractor and the Caterpillar. They pulled the tractor out of its mire. The men returned to work. Long again drove the tractor. Elisea, Sandoval, and the other coworker continued to prune the trees. Elisea looked down from the branches of the tree he was pruning and saw the tractor pinned on a tree, jumping as its wheels continued to turn. Sandoval was pointing at the tractor. Elisea dropped his pruner and

ran to the scene. He turned the tractor off and then noticed Long laying face down on the ground. He yelled for help and called 9-1-1.

When the emergency crew arrived on the scene, Long was in ventricular fibrillation. The EMT's administered a shock and restored Long's heart beat. When Long was admitted to the intensive care unit at St. Charles Medical Center in Bend (St. Charles), a doctor noted a diagnosis of cardiac arrest with syncope and secondary coma due to anoxic encephalopathy. The deprivation of oxygen to Long's brain had been so significant that there was little likelihood that he could recover from the neurological damage and he was suffering almost constant brain seizures. Long passed away in the hospital a little over a week later.

Dr. Semler, a cardiologist, completed a records review at the request of SAIF. He used the diagnosis of ventricular fibrillation and elevated troponins to explain that the cause of the event was myocardial infarction or a heart attack as evinced by the elevated troponins, as well as arterial sclerotic disease. Semler explained that this was not a combined condition because the work incident was not even a material contributing factor in the cardiac event. In other words, work-related activities did not contribute to the condition.

A medical legal consultant, Wilson, testified on behalf of Long. Wilson had been previously licensed as an emergency medical technician and had trained as a physician's assistant. Wilson acknowledged Long's risk factors of coronary artery disease, smoking, hypertension, hypercholesterolemia, carotid artery disease, and peripheral vascular disease. He also agreed that hypertension, smoking, and peripheral vascular disease would contribute to a cardiac event. However, Wilson opined that emotional distress was a "material contributing factor" to Long's cardiac arrest, concluding that Long's preexisting conditions combined with the inhalation of smoke and the emotional stress of the events to trigger Long's cardiac arrest and sudden death.

In his report, Wilson also noted that it is a "reasonable hypothesis" that Long's death was precipitated by

an inhalation injury, which caused him to become light-headed or lose consciousness before hitting the tree with the tractor and falling face down on the ground, and that his subsequent cardiac arrest was caused by asphyxia. Wilson also noted that Semler had not considered Wilson's theory of hypoxia-induced ventricular fibrillation secondary to inhaling the smoke of the burn pile. He added that there was no documentation that Long had coronary artery disease, despite its common association with peripheral artery disease. He also pointed out that an x-ray report from St. Charles noted "L(eft) basilar opacification * * * may be due to infiltrate or aterlectasis." He explained that this finding is associated with inhalation injuries. Finally, Wilson highlighted Semler's note that nothing unusual occurred that day and contrasted Semler's history with the incident with the tractor at the burn pile.

Dr. Li, the staff pathologist for Providence St. Vincent Medical Center, performed a records review for Long's counsel and opined that Long suffered a fatal arrhythmia which led to anoxic brain injury. She said that the event was caused by hypertensive and arteriosclerotic vascular disease. Although she agreed with Wilson that coronary artery disease had not been documented, she concurred with Semler that Long suffered concurrent coronary artery disease given that he had severe peripheral vascular disease, including carotid artery stenosis. Li agreed that myocardial eschemia could be assumed but she also noted that it could have been a fatal arrhythmia. Without an examination of the tissue for necrosis, that determination could not be made. Li opined that it was possible that Long suffered an inhalation injury if he had been exposed to carbon monoxide. She said that his status as an ex-smoker made him vulnerable to this injury so that the attempt to remove the tractor could have triggered a fatal arrhythmia.

Semler reviewed the reports of the other experts and explained that Long's medical treatments prior to the cardiac arrest at issue in this case had not cured the hyperlipidemia and arthrosclerosis. Given all of Long's prior treatment and tests, Semler was "virtually positive" Long had coronary artery disease. He concluded that the major

contributing cause of Long's condition was his preexisting condition. Finally, he opined that Long was an excitable person. Semler simply disagreed that this particular worker would have suffered ventricular fibrillation due to sudden emotional distress relating to the tractor incident.

Finally, Dr. Banitt, a cardiologist, completed a records review for Long on February 12, 2013. Banitt acknowledged Long's risk factors of hypertension, history of tobacco use, and unfavorable lipid profile but he explained that atherosclerosis in some arteries does not necessarily mean that it is a systemic condition that effects all arteries. Because Long did not complain of chest pain, Banitt disputed that coronary artery disease or myocardial infarction caused his death. In Banitt's view, the symptoms were indicative of a sudden or instantaneous event brought on by the stress of the event in which the tractor came close to burning. In short, he disagreed with Semler's assessment and opined, instead, that Long had suffered a stress induced arrhythmia triggered by the events at the burn pile.

On judicial review, both parties agree that ORS 656.802 applies. ORS 656.802(2)(a) provides that, for a claim to be compensable, "[t]he worker must prove that employment conditions were the major contributing cause of [his condition]."[1] For any physical disorder caused or worsened by mental stress, a claimant must also establish the requirements set forth in ORS 656.802(3)(a) through (d). ORS 656.802(1)(b).[2] In any mental stress claim, the evidence that a mental disorder arose out of and in the course and scope of employment must be clear and convincing. ORS 656.802(3)(d).[3] In order to meet this clear and convincing

---

[1] ORS 656.802(2)(a) provides:

"The worker must prove that employment conditions were the major contributing cause of the disease."

[2] ORS 656.802(1)(b) provides:

"As used in this chapter, 'mental disorder' includes any physical disorder caused or worsened by mental stress."

[3] ORS 656.802(3) provides, in pertinent part:

"Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"* * * * *"

standard, the truth of the facts must be highly probable. *Riley Hill Contractors v. Tandy Corp.*, 303 Or 390, 402, 737 P2d 595 (1987).

On review, claimant argues that Semler's reports ought to be given no weight. Without citing binding authority for that proposition, claimant's argument continues that, if no weight is given to Semler's reports, then the board's decision lacks substantial reason and the order must be reversed. SAIF responds that the board's order is supported by substantial evidence and reason, and we agree.

Agency orders, including orders of the board, must be supported by substantial evidence and reason. *Jenkins v. Board of Parole*, 356 Or 186, 195-96, 335 P3d 828 (2014); *Walker v. Providence Health System Oregon*, 254 Or App 676, 686, 298 P3d 38, *rev den*, 353 Or 714 (2013). Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding. ORS 183.482(8)(c).[4] The substantial reason requirement inheres in our substantial evidence standard of review under ORS 183.482(8)(c). *Jenkins*, 356 Or at 196. "In determining whether the board's order is supported by substantial reason, we consider whether that order articulates the reasoning that leads from the facts found to the conclusion drawn." *Walker*, 254 Or App at 686 (internal quotation marks omitted).

Here, the board gave greater weight to the opinion of Semler. Li's report confirms the premises on which Semler relied. Li reported that the heart attack was caused by hypertensive and arteriosclerotic vascular disease. She agreed with Wilson that coronary artery disease had not been documented, but she concurred with Semler that Long suffered concurrent coronary artery disease given that he had severe peripheral vascular disease, including carotid artery stenosis. Li agreed that myocardial eschemia might

---

"(d) There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

[4] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

be assumed and she also noted that it could have been a fatal arrhythmia. As there was no examination of the tissue for necrosis, that determination could not be made. When she spoke to the issue of work-relatedness, Li couched her opinion in terms of possibilities rather than probabilities that Long suffered an inhalation injury and fatal arrhythmia, but she acknowledged the underlying premises of Semler's reports were valid as well. In other words, there are sufficient facts to support Semler's conclusion that the heart attack was caused by Long's preexisting conditions, which had been previously treated and which were significant enough to cause the event. We therefore reject claimant's contention that the board erred by giving weight to Semler's opinion. The board was entitled to rely on that evidence in making its determination.

The findings and conclusions that Semler drew were further substantiated by Long's July 29, 2010, EKG, which indicated left ventricular hypertrophy—a sign of coronary artery disease and the April 14, 2010, operative report that showed a complete occlusion in the femoral artery and an 80 percent occlusion of Long's left carotid artery. All of those facts led Semler to the virtual certainty that Long suffered atherosclerosis in the coronary arteries and therefore they corroborate his conclusions. Thus, after considering the entire record, we conclude that the board's order is supported by substantial evidence.

We need not address whether there is evidence to support claimant's thesis. Rather, our next step is to ensure that the board reasoned its opinion based on the evidence upon which it relied. In that regard, the board recited each of the medical reports in great detail and addressed each of those reports as part of the whole picture in its conclusion.

"In light of the opinions of Drs. Semler and Li, as supported by Wilson, we do not agree with [Long] that Dr. Banitt provided 'clear and convincing' evidence regarding the decedent's lack of coronary artery disease. In particular, Dr. Banitt's opinion that the decedent never displayed symptoms of symptomatic coronary artery disease is not persuasive because he did not respond to Dr. Semler's opinion regarding the decedent's July 29, 2010 EKG finding that was a sign of coronary artery disease. * * * SAIF also

refers to Dr. Williamson's August 6, 2010 operative report for the left carotid endarectomy, which explained that the decedent had coronary disease, as well as severe peripheral occlusive disease and cerebrovascular occlusive disease."

After comparing and contrasting every report, the board drew the conclusion that the medical opinions proffered "are not sufficient to sustain [Long's] burden of proof," citing Semler's analysis and the evidence to support that analysis.

We have determined that the board's order is supported by substantial evidence and substantial reason, *Salosha, Inc. v. Lane County*, 201 Or App 138, 143, 117 P3d 1047 (2005), and therefore affirm.

Affirmed.