Argued and submitted September 1, 2020, affirmed June 3, 2021

In the Matter of the Compensation of
Jack L. Edwards, Claimant.

Jack L. EDWARDS,
*Petitioner,*

*v.*

CAVENHAM FOREST INDUSTRIES,
*Respondent.*

Workers' Compensation Board
1801621, 1801119; A171184

492 P3d 750

Petitioner seeks judicial review of a final order of the Workers' Compensation Board. In that order, the board determined that medical services, including the prescription of antibiotics and the surgical scrubbing of claimant's prosthetic hip to remove an infection, were not compensable under ORS 656.245(1)(a) because, although claimant's prosthetic hip was the result of a workplace injury, the medical services were directed to the infection, a condition for which claimant had been denied coverage. On review, claimant contends both that the board applied the incorrect legal standard and that the board's order was not supported by substantial reason. *Held*: Although the existence of the prosthesis increased plaintiff's risk of infection and required more intervention to remove the infection, there is no but-for causation standard in the first sentence of ORS 656.245(1)(a). The fact that the treatment (prosthesis) for a consequential condition stemming from the original accepted condition (hip fracture) increased plaintiff's risk of developing this new condition (infection) does not mean that the services were for the hip fracture. Moreover, there is no evidence in the record connecting the surgical removal of the infection or the prescription of antibiotics to the hip fracture itself. Because the disputed medical services were not for the original condition, and claimant did not appeal the denial of the hip infection as a consequential condition, the board did not err when it determined the disputed medical services were not compensable under ORS 656.245(1)(a).

Affirmed.

Julene M. Quinn argued the cause and filed the brief for petitioner.

Brad G. Garber argued the cause and filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

James, J., dissenting.

**KAMINS, J.**

Claimant petitions for judicial review of a final order of the Workers' Compensation Board. In that order, the board determined that medical services, including the prescription of antibiotics and the surgical scrubbing of claimant's prosthetic hip to remove an infection, were not compensable under ORS 656.245(1)(a) because, although claimant's prosthetic hip was the result of a workplace injury, the medical services were directed to the infection, a condition for which claimant had been denied coverage. On review, claimant contends both that the board applied the incorrect legal standard and that the board's order was not supported by substantial reason. We affirm.

The parties do not contest the board's findings of historical fact. "We therefore take the facts from the board's order, supplementing them with consistent facts from the record as necessary." *SAIF v. Tono*, 265 Or App 525, 526 n 1, 336 P3d 565 (2014).

In 1980, claimant was working for respondent Cavenham Forest Industries (employer) when he suffered a compensable injury to his right hip and leg in a logging accident. Employer accepted the disabling injury claim and later identified, among other conditions, a dislocated hip and pelvis fracture as accepted conditions (collectively, the "hip fracture"). Claimant underwent a series of surgeries over the next several years to treat the hip fracture, finally culminating in a total hip replacement in 1997.

On September 30, 2017, claimant sought medical treatment for a two-week history of flu-like symptoms, a heart murmur, and right hip pain. He was diagnosed with "sepsis with bacteremia due to streptococcus viridans, and, with regard to the hip, septic arthritis of the right hip, and leukocytosis due to sepsis and hip infection." Claimant's treating physician recommended and performed an emergency debridement of claimant's right hip prosthesis. Claimant subsequently saw an orthopedic surgeon, Dr. Nanson, who diagnosed him with a right hip infection and an inflammatory reaction "due to internal right hip prosthesis" and referred him to an infectious disease specialist. That specialist opined that claimant's infection was

likely endocarditis that had "seized" claimant's hip because claimant's flu-like symptoms preceded his hip pain "by a significant period of time." Claimant was prescribed intravenous antibiotics for six weeks and then oral antibiotics for his lifetime.

Claimant requested acceptance of seven "post aggravation new medical condition/consequential conditions" (collectively, the "hip infection"). At his insurer medical examination, claimant saw an infectious disease specialist, Dr. Leggett, who agreed with the diagnosis of bacteremia and prosthetic joint infection and explained that a prosthetic joint is more likely to attract bacteria because "bacteria in the blood stream tend to go where there has been some trauma or where there is a foreign body." Nanson agreed that bacterial infections are at a much greater risk to settle in a prosthetic joint than a nonprosthetic joint. He stated that claimant "would not have required such treatment but for the presence of the right hip prosthesis."

Employer denied all of claimant's claims for the new hip infection condition. Claimant requested a hearing before an administrative law judge (ALJ). The ALJ concluded that the hip infection was not compensable as a "consequential condition" under ORS 656.245(1)(a) because claimant failed to prove that the major contributing cause of the hip infection was the previously accepted condition (the hip fracture).[1] The ALJ also concluded, however, that a sufficient causal relationship existed between the treatment and the original hip fracture to require compensation as medical services for an "ordinary condition" under both ORS 656.245(1)(a) and ORS 656.245(1)(c)(E), which applies to medical services necessary for prosthetic devices.

Employer sought review before the board, which reversed in part and modified in part the ALJ's order, and, ultimately, upheld employer's denial of both the right hip

---

[1] The ALJ's order was filed before the Supreme Court clarified, in *Garcia-Solis v. Farmers Ins. Co.*, 365 Or 26, 42-43, 441 P3d 573 (2019), that the causal relationship a claimant must establish for a consequential condition claim is between the medical services and the workplace injury, not between the medical services and an accepted condition. Claimant did not appeal the ALJ's determination that his right hip infection was not compensable as a consequential condition.

infection as a consequential condition and compensation for the medical services as treatment for an ordinary condition.[2] In particular, the board determined that the medical services were not compensable because they were for claimant's denied right hip infection, not the original hip fracture. Accordingly, the board reversed the ALJ's order to the extent that it found that the disputed medical services were compensable because they were causally related to claimant's accepted condition.

Claimant petitions for judicial review of the board's decision. On appeal, claimant argues, first, that the board applied the incorrect legal standard in making its determination and, second, that the board's order lacks substantial reason. He contends that the services are compensable as treatment of his original hip fracture, or, in the alternative, as treatment for a consequential condition caused by the original hip fracture.

We review whether the board employed the correct legal standard in applying ORS 656.245(1)(a) for legal error. ORS 183.482(8)(a). We evaluate whether the board's order is supported by substantial reason by determining "whether that order articulates the reasoning that leads from the facts found to the conclusion drawn" and "a reasonable person" could draw the same conclusion. *Long v. SAIF*, 278 Or App 88, 93, 372 P3d 610 (2016). "The substantial reasoning requirement inheres in our substantial evidence standard of review under ORS 183.482(8)(c)." *Id.*; *see also* ORS 183.482(8)(c) ("The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record.").

At issue is the board's interpretation and application of ORS 656.245(1)(a). That statute "makes employers (or their insurers) responsible, in certain circumstances, for 'medical services' necessary to treat 'conditions' that result from compensable workplace injuries." *SAIF v. Sprague*, 346 Or 661, 663, 217 P3d 644 (2009). Medical conditions are

---

[2] The board also referred claimant's medical services claim, which asserted that treatment for the hip infection was necessary to maintain his prosthetic under ORS 656.245(1)(c)(E), to the Workers' Compensation Division. Claimant does not assign error to that determination.

divided into four categories by the workers' compensation statutes: "(1) ordinary conditions; (2) preexisting conditions; (3) consequential conditions; and (4) combined conditions." *Id.* Whether the expenses for medical services are covered depends, in part, on what type of condition requires treatment. *Id.* ORS 656.245(1)(a) sets forth generally when medical services are compensable and how the category of the related condition affects compensability. The first sentence of ORS 656.245(1)(a) provides:

> "For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, [which addresses preexisting conditions,] including such medical services as may be required after a determination of permanent disability."

The second sentence of ORS 656.245(1)(a) provides:

> "In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

Thus, medical services for ordinary conditions "caused in material part by the injury" are generally compensable, and medical services for the three nonordinary categories of conditions are compensable subject to limitations.

The two sentences that form ORS 656.245(1)(a) address different things. *See Vukasin v. Liberty Northwest Ins. Corp.*, 271 Or App 142, 146 n 5, 349 P3d 636 (2015) ("The first sentence of the statute governs the analysis for ordinary conditions, and the second sentence governs the analysis for consequential or combined conditions."). The first sentence, which addresses "ordinary conditions,"[3] provides that medical services are compensable if they are "for conditions caused in material part by the injury for such period as the nature of the injury or the process of recovery requires[.]" The word "injury" in the first clause of that

---

[3] The first sentence also addresses the limitations posed by preexisting conditions, which are not at issue here.

sentence refers to "the work accident that caused the medical condition and resulted in the need for medical services," and the word "injury" in the second clause refers to "the medical condition that resulted from the accident." *Garcia-Solis v. Farmers Ins. Co.*, 365 Or 26, 39, 42-43, 441 P3d 573 (2019). Thus, medical services are compensable under the first sentence of ORS 656.245(1)(a) if they are for conditions caused in material part by the work accident, and that compensability extends for however long the nature of the conditions caused by the accident or the recovery from those conditions requires.

The second sentence of ORS 656.245(1)(a) provides that medical services are compensable in certain circumstances "for consequential and combined conditions described in ORS 656.005(7)." ORS 656.005(7), in turn, provides that a consequential condition is one where "the compensable injury is the major contributing cause of the consequential condition." ORS 656.005(7)(a)(A). The word "injury" here appears to refer to the accepted condition, not the workplace accident. *See Brown v. SAIF*, 361 Or 241, 261, 391 P3d 773 (2017) ("compensable injury," as defined in ORS 656.005(7)(a), refers to the accepted condition); *Garcia-Solis*, 365 Or at 35 (assuming that "*Brown* does interpret ORS 656.005(7)(a) to hold that 'compensable injury' means only accepted conditions"). The second sentence further provides that medical services for those consequential conditions are compensable only if they are "directed to medical conditions caused in major part by the injury." And "injury" here means "the work accident, *not* the resulting medical conditions." *Garcia-Solis*, 365 Or at 42 (emphasis added).

So, incorporating the definition for consequential condition into its text and replacing "injury" with the differing definitions applied by the Supreme Court, the second sentence reads: For medical conditions caused in major part by an accepted condition, medical services are compensable only for medical conditions caused in major part by the work accident. Here, claimant cannot prevail on a claim that the medical services were for a condition "caused in major part by the accepted condition" because he did not seek judicial review of the denial of his claim for the new consequential condition of a hip infection, which he asserts was caused in

major part by the hip fracture. *See Sprague*, 346 Or at 673 (Because the board rejected claimant's claim for a condition and claimant did not appeal that order, the denied condition was not before the court as a basis for compensation of medical services.). Accordingly, we turn to the determination, as found by the ALJ but rejected by the board, that the medical services were compensable because they were for an ordinary condition, not a consequential condition.

Continued medical treatment for an accepted condition is compensable under the first sentence of ORS 656.245(1)(a) for as long as the treatment is required. And it does not matter if those services also help a different condition, so long as they treat the accepted condition as well. *See Sprague*, 346 Or at 674 (explaining that ORS 656.245(1)(a) does not require that a "claimant's compensable injury be the major contributing cause of claimant's *need for medical services*" (emphasis in original)). So, contrary to the board's view, the fact that claimant was seeking treatment for flu-like symptoms caused by an infection does not preclude the applicability of the first sentence—so long as the medical services treated the original condition as well as the potentially unrelated symptoms.

Under the first sentence of ORS 656.245(1)(a), claimant must demonstrate that (1) the condition at issue—the hip fracture—was caused by the workplace accident and (2) the disputed medical services were for that condition. *See Sprague*, 346 Or at 674-75 (claimant's gastric bypass surgery was performed because weight loss was necessary for the effective treatment of claimant's accepted knee injury, so it was compensable even though it mainly targeted claimant's obesity). There is no dispute that the hip fracture was caused by the workplace accident, so the only question before us is whether the disputed medical services were *for* that condition.

To answer that question, we begin by examining the relevant medical condition—a serious condition involving a constellation of injuries that we collectively refer to as hip fracture. The treatment at issue here included a surgical debridement to remove the infection from the prosthesis and several courses of antibiotics. None of those services treated

the original hip fracture. There is no evidence in the record connecting the surgical removal of the infection or the prescription of antibiotics to the hip fracture itself. No doctor opined that the treatment treated the fracture in any way.

The dissent describes the question as whether "the medical services are 'caused in material part' by the injury," contending that "if the 'nature of the injury'—*i.e.*, the nature of the medical condition created by the accident—materially causes the need for medical services * * *, those medical services shall be paid by the employer." 312 Or App at 163 (James, J., dissenting). However, the key question is whether the medical services were *for*—not caused by—the condition that was caused by the workplace accident. In *Sprague*, the court rejected the board's requirement that "claimant's compensable injury be the major contributing cause of claimant's *need for medical services*" because "[t]hat is not what the statute requires." 346 Or at 674 (emphasis in original). Rather, under the second sentence, the question is whether the medical services are "directed to" the relevant condition.[4] *Id*. The corollary language in the first sentence is whether the services are "for" the original condition. ORS 656.245(1)(a). That is the causal relationship we must evaluate. And the services described above were not "for" the original condition.

The dissent posits that we are defining the original condition too narrowly when, for clarity, we collectively refer to it as the "hip fracture" and that it is more accurately characterized as the "destruction and lifetime destabilization of [claimant's] hip." 312 Or App at 165 (James, J., dissenting). We do not disagree that the damage was severe: as the dissent describes, claimant had a protracted treatment history that ultimately resulted in the complete replacement of his hip with an implant. However, claimant's final surgery—in which he received that implant—occurred in 1997, twenty years before he developed the infection at issue. That surgical procedure (which occurred 10 years after the most recent previous surgery to treat claimant's hip) was, like the

---

[4] Under the second sentence, the relevant condition would be a consequential or combined condition; under the first sentence, the relevant condition is the original condition. *See* 312 Or App at 159-60; ORS 646.245(1)(a).

surgical scrubbing here, not treatment for the original hip fracture. Rather, it was approved to treat an accepted *consequential* condition of lumbar strain caused by the original accepted condition of hip fracture.

To the extent that the *implant* continues to require medical services, the legislature separately provided for that type of protracted treatment scenario. As relevant here, services to repair, replace, or maintain a prosthesis— as opposed to treatment for the condition that created the need for the prosthesis—are covered under ORS 656.245 (1)(c)(D), (E) (providing for indefinite coverage for "prosthetic devices" and "[s]ervices necessary to monitor the status, replacement or repair of prosthetic devices").[5] If the "nature of the injury" includes the "prosthesis"—as claimant and the dissent suggest—the statutory provision providing indefinite coverage for services to maintain prostheses would be superfluous.

Although the existence of the prosthesis increased plaintiff's risk of infection and required more intervention to remove the infection, there is no but-for causation standard in the first sentence of ORS 656.245(1)(a). The fact that the treatment (prosthesis) for a consequential condition stemming from the original accepted condition (hip fracture) increased plaintiff's risk of developing this new condition (infection) does not mean that the services were *for* the hip fracture. If that were the standard, there would be no need for a second sentence addressing "consequential" conditions at all. All consequential conditions, by definition, can be traced back to the original condition that was caused by the workplace accident. Accordingly, any treatment for those consequential conditions would not be required "but for" the workplace accident.

Because the disputed medical services were not for the original condition, and claimant did not appeal the denial of the hip infection as a consequential condition, the board's order is affirmed.

Affirmed.

---

[5] Claimant did request coverage under ORS 656.245(1)(c)(E), a claim that was referred to Workers' Compensation Division and is not before us on appeal.

**JAMES, J.,** dissenting.

ORS 656.245(1)(a) provides:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225[.]"

In *Garcia-Solis v. Farmers Ins. Co.*, the Oregon Supreme Court held that the term "injury" in that statutory section means different things, depending on where in the statute the term occurs. 365 Or 26, 38-39, 441 P3d 573 (2019). As the court explained:

"In short, ORS 656.245(1)(a) presents a situation where the same term—here, 'injury'—is used in different ways, with apparently different meanings, within the same statutory provision. The phrase 'medical services for conditions caused *** by the injury' uses 'injury' to mean the workplace accident. The phrase 'for such period as the nature of the injury *** requires' uses 'injury' to mean the medical condition that resulted from the accident."

*Id.* (ellipses in original).

Under the terms of the statute, medical services are provided for any condition caused in material part by the workplace accident. How long the employer is liable to provide those medical services is determined not by the accident, nor even the medical condition—but rather by the *nature* of the medical condition. Accordingly, if the "nature of the injury"—*i.e.*, the nature of the medical condition created by the accident—materially causes the need for medical services at some distant point in the future, or even indefinitely, those medical services shall be paid by the employer.

In approaching this case, therefore, before we can determine if the medical services are "caused in material part" by the injury, such that the employer shall provide medical services "for such period as the nature of the injury or the process of the recovery requires," we must first, axiomatically, define what the "injury" is. Under *Garcia-Solis*, that is an inquiry into the nature of the medical condition that resulted from claimant's accident. 365 Or at 38-39.

I agree with my colleagues in the majority for the entirety of the opinion, up until page 160. But at that point in the analysis, the majority defines claimant's medical condition as simply "hip fracture." And, with that narrow definition, the majority reasons,

> "The treatment at issue here included a surgical debridement to remove the infection from the prosthesis and several courses of antibiotics. None of these services treated the original hip fracture. There is no evidence in the record connecting the surgical removal of the infection or the prescription of antibiotics to the hip fracture itself. No doctor opined that the treatment treated the fracture in any way."

312 Or App at 160-61.

In my opinion, the majority's conceptualization of claimant's medical condition does not accurately and fully capture the "nature" of the injury. One can break their leg and get a cast, and, in six weeks, have the cast removed and go on with their life. Alternatively, one can break their leg and begin a years-long ordeal of surgeries, screws, plates, physical therapy, further surgeries, and eventual bone or joint replacement. Those two injuries are not both, equally, "fractures." Equating them fails to accurately appreciate their "nature," which is what ORS 656.245(1)(a) requires.

Here, claimant did not suffer a simple fracture. Rather, he suffered an extreme, catastrophic, and destabilizing injury to his hip and pelvis—one that required immediate major and invasive surgery to repair. That surgery involved an open reduction and the insertion of multiple screws to rebuild claimant's hip. Had those screws become infected, the need to treat that infection would have been "caused in material part" by the nature of the injury.

Claimant's hip screws did not succeed in addressing the nature of his injury, and they were removed in a second surgery. But the removal of the screws brought about a third surgery—this time to fuse the bone plate. That, in turn, brought about a fourth surgery to replace the fusion plate and a fifth to repeat the fusion. Again, with each of those surgeries, a resulting infection in the hip would have been "caused in material part" by the nature of the injury.

Unfortunately for claimant, there was more. Three years after the last fusing, the hip required further attempts to repair the nature of its injury. Claimant underwent a sixth surgery—an arthrodesis takedown and medial displacement osteotomy involving another open reduction, and this time, internal fixation with plates and allograft bone. That stabilized the hip for the longest period of claimant's recovery, about a decade. But then, a seventh surgery was required, this time to remove the plates and screws and undertake a total hip arthroplasty. That surgery left claimant with the prosthetic he has today. As I understand this record, there is no dispute that the need for any of those various surgeries—even though the surgeries occurred years after the workplace accident—were materially caused by the nature of claimant's injury.

Accordingly, I view the "nature" of claimant's injury as more than a simple fracture. The nature of his injury was the destruction and lifetime destabilization of his hip, resulting, ultimately, in full prosthetic replacement. With that conceptualization of the nature of claimant's injury, I conclude that the medical service required here—yet another operation in a decades-long line of surgeries—was clearly "caused in material part" by the nature of that injury.

When claimant entered the hospital for the infection underlying this case, an ultrasound revealed fluid buildup in his hip. Doctors needed to operate—not to treat the infection, but rather to drain, irrigate, and debride the hip. As the doctor testified, the need for the medical services at issue here were materially caused by the nature of claimant's hip injury:

> "This is because the bacteria that caused the infection are attracted to and will settle on prosthetic devices. * * * With a unilateral prosthesis, the invading bacteria will attach to the prosthetic device. If a patient has bilateral protheses, the infection will typically settle on one side more than the other."

As this record reflects, without the damage to the hip, which ultimately required a prosthetic after multiple failed surgeries, claimant's infection would have been treated with basic antibiotics, and not surgery. The medical

services at issue here—the surgery and debridement—were "caused in material part" by the nature of claimant's injury to his hip.

Accordingly, I agree with the reasoning of the ALJ, and would reverse the decision of the board in this matter.

I respectfully dissent.