Argued and submitted March 28, 2012, reversed and remanded January 30, petition for review denied May 30, 2013 (353 Or 714)

In the Matter of the Compensation of
Joy M. Walker, Claimant.

Joy M. WALKER,
*Petitioner,*

*v.*

PROVIDENCE HEALTH SYSTEM OREGON,
*Respondent.*

Workers' Compensation Board
0906234; A148304

298 P3d 38

Ronald A. Fontana argued the cause and filed the briefs for petitioner.

Theodore P. Heus argued the cause for respondent. With him on the brief was Scheminske & Lyons, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Claimant seeks review of a Workers' Compensation Board order, challenging two of the board's determinations: (1) that claimant is not entitled to penalties under ORS 656.268(5)(d) for the self-insured employer's *de facto* refusal to close her claim, and (2) that claimant is not entitled to attorney fees under ORS 656.382(1) for employer's allegedly unreasonable resistance to paying compensation. "We review the board's decision for substantial evidence and errors of law, and to determine whether the board's analysis comports with substantial reason." *SAIF v. Ramos*, 252 Or App 361, 363, 287 P3d 1220 (2012). For the reasons set out below, we reverse and remand.

Although the issues presented in this case are narrow, the underlying procedural history is somewhat complicated and has led to several petitions for judicial review and one published opinion from this court. *Providence Health System v. Walker*, 252 Or App 489, 289 P3d 256 (2012) (*Walker II*). The history of the claim begins in April 2004, when "claimant, who worked as a certified nursing assistant in an elder-care facility, filed a workers' compensation claim with employer," reporting symptoms of, among other things, acute anxiety. *Id.* at 490. Psychiatrist Lynn Friedman evaluated claimant in July 2004 and began treating her later that summer.

Employer denied claimant's claim in May 2004. An administrative law judge (ALJ) set aside that denial, the board affirmed the ALJ's order, and, on judicial review, this court affirmed the board's decision. *Joy M. Walker*, 58 Van Natta 11 (2006), *aff'd without opinion, Providence Health Systems v. Walker*, 210 Or App 466, 151 P3d 960 (2007) (*Walker I*).

In 2007, employer accepted "anxiety with depression." Claimant then requested that the acceptance be modified to include major depression and panic disorder without agoraphobia, which employer treated as a request to accept an omitted condition and denied. An ALJ set aside the denial of "major depression and panic disorder" in a 2008 order and the board affirmed on March 23, 2009.[1]

---

[1] This stage of the processing of claimant's claim was subject to additional proceedings, not relevant to the issues before us, that *Walker II* addressed in detail.

Claimant requested claim closure in late March 2009, based on the board's March 23 order and Friedman's reports. Employer issued a Notice of Refusal to Close in early April 2009, explaining that it needed to schedule an independent closing evaluation to determine the extent of any permanent impairment associated with claimant's accepted condition. That same month, employer notified claimant of an independent medical examination (IME) with psychologist Jack Davies.

Two days after it issued the Notice of Refusal to Close, employer modified its acceptance of claimant's claim to include "disabling anxiety and depression and acute major depression and panic disorder." Claimant objected to the acceptance of "acute major depression and panic disorder," arguing that employer needed to accept "major depression and panic disorder" as previously ordered by the board. Claimant also objected to the scheduled IME, requesting that employer close the claim based on Friedman's existing reports.

At her attorney's instruction, claimant did not attend the IME scheduled in April 2009. Employer then submitted a request to suspend claimant's benefits based on her failure to attend that IME. The Workers' Compensation Division (WCD) denied employer's request in May 2009, reasoning that employer had failed to comply with applicable administrative rules.

Employer then rescheduled the IME, arranging for claimant to see Davies in June 2009. Claimant's attorney told claimant not to attend that examination either, asserting that Davies was not authorized to conduct IMEs pursuant to ORS 656.325. Claimant did not attend the June IME, and employer again requested suspension of her workers' compensation benefits. On July 6, 2009, WCD suspended claimant's benefits, finding that her explanation for the failure to attend the June IME was unreasonable. That suspension order provided, in part:

"The suspension shall continue until such time as the worker has notified the insurer of agreement to be examined and, in fact, submits to an examination by a physician designated by them.

"If the worker has not made an effort to have compensation benefits reinstated within 60 days of the date of this order, the insurer may close the claim. This order will then terminate upon closure of the claim."

Claimant requested a hearing regarding the suspension order.[2]

Meanwhile, Friedman performed a new closing examination at the request of claimant's attorney, and she reported the results of that examination on September 24, 2009. On September 30, claimant requested claim closure based on that report. Employer did not issue a notice of closure or notice of refusal to close the claim within 10 days of claimant's request as required by ORS 656.268(5)(b), which provides:

"If the insurer or self-insured employer has not issued a notice of closure, the worker may request closure. Within 10 days of receipt of a written request from the worker, the insurer or self-insured employer shall issue a notice of closure if the requirements of this section have been met or a notice of refusal to close if the requirements of this section have not been met."

Indeed, employer did not issue a notice of closure until November 5, 2009. In that notice, employer stated that the claim had been reopened to process new conditions and was being closed at that point "pursuant to Order Suspending Compensation Pursuant to ORS 656.325 dated 7-6-09."

The November 2009 notice of closure stated that claimant was not entitled to permanent disability "under the provisions of this administrative closure." Claimant requested reconsideration of that notice and, on reconsideration before the Appellate Review Unit of the WCD, claimant was awarded 35 percent permanent partial disability based on Freidman's report.

Claimant requested a hearing regarding employer's allegedly unreasonable refusal to close the claim within 10 days, seeking the assessment of penalties under ORS

---

[2] Petitioner's challenge to that order is pending before this court in case number A148303.

656.268(5)(d) and attorney fees under ORS 656.382.[3] A hearing was held before an ALJ and, in written closing arguments, employer conceded that its decision not to close the claim within 10 days of claimant's September 30, 2009, request constituted a *de facto* "refusal to close" for purposes of ORS 656.268(5)(d). Employer argued, however, that its conduct had not been unreasonable because it had insufficient information to close the claim, Friedman had rendered inconsistent opinions about claimant's impairment, and claimant had not attended the scheduled IME.

The ALJ concluded that claimant was not entitled to a penalty or attorney fees. Claimant sought board review of the ALJ's order, arguing that employer had acted unreasonably in *de facto* refusing to close her claim by October 10, 2009—10 days after her September 30 closure request—because it had sufficient information on which to base claim closure. In addition, claimant asserted, the July 6, 2009, suspension order "did not have the [effect] of suspending employer's obligation to process the claim." To the contrary, claimant argued, the suspension order provided *another* trigger for claim closure because "OAR 436-060-0095(11) actually required employer to close the claim within sixty days of the issuance of the suspension order."[4] Accordingly, claimant concluded, the suspension

---

[3] ORS 656.268(5)(d) provides:

"If an insurer or self-insured employer has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close was not reasonable, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

ORS 656.382(1) provides:

"If an insurer or self-insured employer refuses to pay compensation due under an order of an Administrative Law Judge, board or court, or otherwise unreasonably resists the payment of compensation, except as provided in ORS 656.385, the employer or insurer shall pay to the attorney of the claimant a reasonable attorney fee as provided in subsection (2) of this section. To the extent an employer has caused the insurer to be charged such fees, such employer may be charged with those fees."

[4] OAR 436-060-0095(11) provides, "If the worker makes no effort to reinstate compensation in an accepted claim within 60 days of the mailing date of the

order did not negate the requirement that employer close the claim by October 10, 2009 (within 10 days of claimant's request), because the suspension order itself required employer to close the claim by September 4 (60 days after the July 6 suspension order issued).

In response, employer argued to the board that it "lacked sufficient information to determine permanent disability related to the newly accepted conditions." Employer also argued that it "had a legitimate doubt as to its liability due to the * * * July 6, 2009 suspension order, which remained in effect at the time of claimant's September 30, 2009 request for closure." Finally, employer argued, no penalty could be awarded in any event, as the penalty for unreasonable refusal to close a claim is "25 percent of all compensation determined to be then due the claimant" and, at the time of the eventual November 5, 2009, notice of closure, no compensation was "due" because the notice "did not award any permanent disability." According to employer, "[b]ecause no compensation was payable under the November 5, 2009 Notice of Closure, there can be no penalty assessed in this case," even though 35 percent permanent partial disability was awarded on reconsideration.

In the order that is the subject of this judicial review proceeding, the board affirmed the ALJ's order denying claimant's request for a penalty and attorney fees, citing two bases for its decision. First, the majority opinion focused on the September 2009 suspension order, ultimately holding that employer had not acted unreasonably in refusing to close the claim because, the board concluded, employer could have a "legitimate doubt" regarding when an insurer or self-insured employer must close a claim after a claimant's benefits have been suspended. In addition, the board concluded that no penalty could be due in any event, as an ORS 656.268(5)(d) penalty equals 25 percent of the compensation "then due" when a notice of closure or notice of refusal to close is issued, and employer had determined in the November 5, 2009, notice of closure that *no* compensation was due. One board member dissented.

---

consent to suspend order, the insurer must close the claim under OAR 436-030-0034(7)."

Claimant petitions for judicial review of the board's order, raising six assignments of error. Each of claimant's assignments pertains to an aspect of the rationale underlying the board's determination that claimant was not entitled to a penalty under ORS 656.268(5)(d) or attorney fees under ORS 656.382(1). We consider those assignments together, understanding claimant's basic contention to be that the board erred when it declined to assess a penalty and attorney fees.

We start by addressing the board's determination that employer owed no penalty because no amounts were "then due" when employer closed the claim. The board based that conclusion on ORS 656.268(5)(d), which provides:

> "If an insurer or self-insured employer has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close was not reasonable, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to *25 percent of all compensation determined to be then due the claimant."*

(Emphasis added.) Focusing on the emphasized part of the quoted statute, the board reasoned that, because employer's November 5, 2009, notice of closure "did not award any permanent disability, there was no 'amount determined to be then due' upon which to assess a penalty." Claimant challenges that determination on review, arguing that the penalty should not be based on the award of zero disability in the November 5 notice of closure, but should instead be based on the 35 percent permanent partial disability award that the WCD granted on reconsideration of that notice.

Claimant's argument requires us to construe the statutory phrase "compensation determined to be then due." We perform that task using the familiar methodology set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), starting with consideration of the statutory provision's text and context. For two reasons, we agree with claimant that the board erred, as a matter of law, in concluding that the "compensation determined to be then due" is the amount

of compensation that employer awarded in the November 5 notice of closure (*i.e.*, no compensation). First, in requiring the penalty to be based on the amount of compensation "then due," ORS 656.268(5)(d) necessarily refers to a particular point in time; that is the import of the word "then." The only activity to which the statute refers is the insurer's or self-insured employer's issuance of an *unreasonable* notice of closure or refusal to close. Accordingly, the relevant point in time must be the time at which that unreasonable notice of closure or refusal to close was issued. In this case, employer acknowledges that it *de facto* refused to close the claim within 10 days after claimant requested claim closure—that is, by October 10, 2009. It is the amount of compensation to which claimant was entitled on *that* date (the date of employer's purportedly unreasonable refusal to close), not the amount to which claimant may have been entitled at some later point (like November 5, 2009, the date on which employer finally issued a notice of closure) that matters if a penalty is to be assessed under ORS 656.268(5)(d).

Second, even if the date of *eventual* claim closure were the pertinent date for purposes of ORS 656.268(5)(d), the question is the amount of compensation that actually was "due" claimant on that date, not the amount that employer awarded in the notice of closure. On that point, *Johnson v. SAIF*, 219 Or App 82, 180 P3d 1237 (2008), provides important context. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes and case law"). In *Johnson*, the insurer failed to issue either a notice of closure or a notice of refusal to close a claim within 10 days after receiving the claimant's request for claim closure, although the insurer did close the claim a few weeks later. In that late notice of closure, the insurer awarded $28,211.20 in permanent partial disability and offset that award by $8,405.12 in overpaid temporary disability benefits, paying the claimant a net $19,806.08 in benefits. 219 Or App at 85.

The claimant requested a hearing, seeking a penalty for the insurer's failure to timely issue a notice of closure or notice of refusal to close the claim. Because the insurer had violated ORS 656.268(5)(b), the ALJ assessed a penalty of 25 percent of all compensation "then due" the claimant.

A dispute later arose about how much compensation was "then due." The claimant argued that the penalty should be based on the full permanent partial disability award of $28,211.20. *Id.* The board disagreed, "concluding that 'compensation determined to be then due the claimant' under ORS 656.268(5)(d) means the compensation award less the amount of any authorized offset for an overpayment." *Id.* Accordingly, the board ruled, the penalty should equal 25 percent of $19,806.08—the amount of benefits paid after the insurer offset the temporary disability that it previously had overpaid—not 25 percent of the $28,211.20 permanent partial disability benefits awarded.

On review, we affirmed the board's order. Relying on a dictionary definition of the word "due," we concluded that "the amount 'due'" under ORS 656.268(5)(d) "is the amount that [the] claimant was entitled to be paid, and not * * * the amount 'awarded.'" *Id.* at 86. That same reasoning applies here. The amount "due" claimant when employer issued the November 5, 2009, notice of closure was the amount that claimant was *entitled* to be paid at that time, not the amount (here, nothing) awarded in the notice of closure. As determined on reconsideration, claimant was entitled to receive 35 percent permanent partial disability. Accordingly, any penalty must be based on that disability award, not on the earlier denial of benefits reflected in the notice of closure. The board erred when it concluded, to the contrary, that no penalty could be due because employer initially awarded no compensation.

Having rejected the board's second rationale for declining to award a penalty in this case, we return to the first—the board's rejection of claimant's argument "that the employer's *de facto* refusal to close the claim was unreasonable." In *Walker II*, we explained our standard for reviewing that kind of determination:

> "Whether conduct of insurers or self-insured employers is unreasonable such that attorney fees or penalties are warranted involves both legal and factual questions. The correct legal inquiry is whether the employer had legitimate doubt about its liability. If the board has used the correct legal standard, then we review its finding about

reasonableness for substantial evidence, considering that conclusion in light of all the evidence available to the employer."

252 Or App at 505 (citations omitted).

Reviewing the board's order as a whole, we are satisfied that the board applied the correct legal standard, setting out to determine whether employer had legitimate doubt about its duty to close claimant's claim before November 5, 2009. Accordingly, we review the board's determination that employer had such a "legitimate doubt" for substantial evidence and reason. In determining whether the board's order is supported by substantial reason, we consider whether that order "articulates the reasoning that leads from the facts found to the conclusions drawn." *Salosha, Inc. v. Lane County*, 201 Or App 138, 143, 117 P3d 1047 (2005).

We consider the board's reasoning in light of the arguments that the parties presented to it. As noted, claimant had argued two main points to the board. First, claimant asserted that employer was required to issue a notice of claim closure within 10 days of her September 30, 2009, request for closure—by October 10, 2009—because it then had sufficient information to close the claim. In addition, claimant argued before the board that the July 6, 2009, suspension order had not suspended employer's obligation to process her claim. Instead, claimant argued, that suspension order created a *second* basis for claim closure, and had required employer, under OAR 436-060-0095(11), to close her claim within 60 days after the suspension order issued (by September 4, 2009).

In its order, the board focused on employer's second argument, regarding the effect of the July 6, 2009, order suspending claimant's benefits. The board rejected claimant's argument that OAR 436-060-0095(11) requires a self-insured employer (or insurer) to close a claim no later than 60 days after issuance of the suspension order if the claimant has not made an effort to have benefits reinstated. In reaching that conclusion, the board emphasized that the rule does not include a specific deadline for closure:

"OAR 436-060-0095(11) * * * provides:

"'If the worker makes no effort to reinstate compensation in an accepted claim within 60 days of the date of the consent to suspend order, the insurer must close the claim *under OAR 436-030-0034(7).*' (Emphasis added).

"Pursuant to OAR 436-060-0095(11), because there is no evidence that claimant made an effort to reinstate compensation within 60 days after the July 6, 2009 suspension order, the employer was required to close the claim 'under OAR 436-030-0034(7).' Nevertheless, OAR 436-060-0095(11) does not prescribe *when* (after the expiration of the 60-day period with no effort by claimant to reinstate compensation) the employer must do so."

(Emphasis in board's order.) Noting that OAR 436-030-0034(7) also does not specify a deadline for claim closure after a suspension order, the board concluded that, after expiration of the 60-day "cooperation period," an insurer or self-insured employer has *discretion* to close a claim, but is not required to do so. A dissenting board member disagreed, opining that the insurer or self-insured employer *must* close a claim under those circumstances.

So far, so good. If the only issue before the board was whether OAR 436-060-0095(11) required employer to immediately close the claim 60 days after the July 6, 2009, suspension order issued, we might conclude that substantial evidence supported a determination that employer had "legitimate doubt" regarding whether it was obligated to do so. As employer contends, the disagreement between board members on that point, which is based on arguably imprecise wording in the pertinent administrative rules (and the suspension order itself), suggests that even those familiar with the workers' compensation system reasonably can disagree about when OAR 436-060-0095(11) itself imposes a claim-closure requirement on insurers and self-insured employers.

The difficulty is that OAR 436-060-0095(11) is not the only law that required claim closure here. The more directly applicable law is ORS 656.268(5)(b), which required employer to issue a notice of closure or of refusal to close within 10 days of receiving claimant's September 30, 2009, request for claim closure. Nothing about that statute, which

states that insurers and self-insured employers "shall" issue such notices within 10 days, suggests that the 10-day deadline might not apply if (as here) the employer's duty to pay workers' compensation benefits has been suspended because the worker has refused to submit to an IME. *See also* OAR 436-030-0017(1) (employer "must" issue a notice of closure or of refusal to close within 10 days of receiving a written request for claim closure).

The board's order does not explain why, in light of the unambiguous ORS 656.268(5)(b) requirement, employer could have a legitimate doubt about its obligation to close claimant's claim within 10 days of receiving her request for claim closure. Instead, the order simply states that no existing case law specifically addresses a situation, like this one, that involves both a suspension order and a request for claim closure. Without further explanation, the order then concludes that, in the absence of precedent involving such directly analogous facts, employer's *de facto* refusal to close the claim was not unreasonable.

With respect, we do not understand the analysis underlying the board's conclusion. We acknowledge the accuracy of the board's assertion that there is "no case precedent" that discusses a claim for which there is both a request for claim closure and an order suspending payment of compensation. But that absence of governing precedent, without more, is not dispositive. Controlling case law is needed only where some *other* aspect of the pertinent law creates uncertainty, such as where applicable statutes are reasonably susceptible to competing interpretations. *See, e.g., Walker II*, 252 Or App at 506-07 (the employer had legitimate doubt about its obligations where the relevant statute was "susceptible to more than one interpretation" *and* existing case law did not resolve the question). Otherwise, an employer could defeat a request for attorney fees simply by pointing out a lack of case law directly on point, regardless of its refusal to fulfill clearly mandated statutory obligations.

Here, the board's order does not explain why employer could have a "legitimate doubt" about its obligation to close the claim within 10 days of claimant's request,

given the unambiguous mandate of ORS 656.268(5)(b). Nor does the board's order indicate in what way the benefit-suspension order could create legitimate confusion on that point, as nothing in that order suspends any aspect of claim processing; to the contrary, it has the effect only of suspending an insurer's or self-insured employer's obligation to pay compensation.[5] Moreover, the board's order does not explain why employer might somehow reasonably have become uncertain about its ORS 656.268(5)(b) obligation simply because of any confusion regarding whether, and when, OAR 436-060-0095(11) might *also* have required employer to close claimant's claim. In short, we conclude that substantial reason does not support the board's determination that the suspension order gave employer legitimate doubt about its obligation to close the claim.

Our conclusion on that point does not end the matter, however. As noted, in addition to arguing about the effect of the suspension order, employer also argued to the board that it was not required to close claimant's claim within 10 days of receiving her request because it lacked sufficient information to do so. *See* ORS 656.268(1)(a) (employer generally must close a claim when the claimant "has become medically stationary and there is sufficient information to determine permanent disability"). Because the board deemed "dispositive" employer's "argument concerning the suspension order," it did not address the parties' disagreement about whether employer had sufficient information to close the claim within 10 days after claimant's September 30, 2009, request. We remand so the board may consider that aspect of employer's contention that its *de facto* refusal to timely close claimant's claim was reasonable.

Reversed and remanded.

---

[5] ORS 656.325(1), the statute authorizing suspension of benefits under certain conditions if a claimant refuses to submit to an IME, also does not suggest that a benefit-suspension order has any other effect on claims processing.