Argued and submitted September 21, 2015, reversed and remanded
September 7, 2017

Barbara J. GAINES,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT;
and King Harvest Natural Foods, Inc.,
*Respondents.*

Employment Appeals Board
2013EAB2188; A155941

403 P3d 423

Dallas S. DeLuca argued the cause for petitioner. With him on the briefs was Markowitz Herbold PC.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent Employment Department. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

No appearance for respondent King Harvest Natural Foods, Inc.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

**HADLOCK, C. J.**

Claimant seeks judicial review of an Employment Appeals Board decision denying her unemployment benefits on the ground that she voluntarily left work without good cause. Claimant challenges that determination, arguing, in part, that the board's decision is not supported by substantial evidence and substantial reason.[1] For the following reasons, we agree that the order lacks substantial reason. Accordingly, we reverse and remand to the board for reconsideration.

Because it is helpful in understanding the issues in this case, we begin by setting forth the pertinent legal framework. ORS 657.176(2)(c) disqualifies a person who "[v]oluntarily left work without good cause" from receiving unemployment benefits. The Director of the Employment Department has adopted rules that the department follows in implementing that statutory directive. Under those rules, "good cause" for voluntarily leaving work "is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." OAR 471-030-0038(4). "Work" is defined as "the continuing relationship between an employer and employee." OAR 471-030-0038(1).

The rules also explain the difference between voluntarily leaving work and being discharged from it:

"The distinction between voluntary leaving and discharge is:

"(a)   If the employee could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work;

"(b)   If the employee is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge."

OAR 471-030-0038(2).

With that context in mind, we turn to the facts of this case. We take the following basic outline of events from

---

[1] Claimant also makes a procedural argument on appeal regarding the timeliness of employer's appeal. We reject that argument without discussion.

the board's factual findings. Claimant worked for employer as a delivery driver and production worker from July 17, 2012 to August 30, 2012. In August of 2012, "employer's owner [Beckner] told claimant that work was slowing down and that other part time employees wanted extra hours." Accordingly, claimant stopped working for employer. However, Beckner indicated that there might be additional work for claimant in October 2012. In October, claimant called employer, seeking further employment. Although she left a voicemail, employer did not return claimant's call, and claimant did not make additional efforts to contact employer.

Claimant filed for unemployment insurance benefits with the Oregon Employment Department in September 2012. The department granted her benefits. However, in July 2013, the department issued an amended administrative decision cancelling its previous decision. The department based its amended decision on a determination that claimant voluntarily left work without good cause. The July 2013 decision denied claimant benefits retroactive to September 2, 2012.

Claimant timely appealed to an administrative law judge (ALJ), and a contested case hearing was held. Ultimately, the ALJ concluded that claimant had voluntarily left work at the end of August for personal reasons. Claimant sought review before the Employment Appeals Board. The board affirmed the ALJ's conclusion that claimant had voluntarily left work without good cause, but the board made different factual findings and used different reasoning. The board did not find, as the ALJ had, that claimant had voluntarily left employment in August 2012 for personal reasons.[2] Rather, the board found:

---

[2] The board's findings differed significantly from the ALJ's, which resolved conflicting testimony between claimant and Beckner regarding the circumstances under which claimant stopped working at the end of August 2012. Claimant testified that she had been hired to fill in for vacationing employees and that, toward the end of August, Beckner told her "that it was getting into the slow season and other employees * * * wanted extra hours." Claimant further testified that Beckner said that, "as the business picked up she thought that there might be work for [claimant] in October." Beckner testified, to the contrary, that claimant was hired to work three days per week plus some extra hours. Beckner denied having laid claimant off because of a slowdown in business at the end of August; rather, she testified, claimant gave two weeks' notice of her intention to quit to deal with some personal issues. The ALJ explained why, based on

"(1) [Employer] employed claimant from July 17, 2012 to August 30, 2012 as a delivery driver and production worker.

"(2) In August 2012, [Beckner] told claimant that work was slowing down and that other part time employees wanted extra hours. She also told claimant that there might be work for claimant in October 2012. Although claimant did not perform work for the employer after August 2012, she expected to return to work for the employer in October 2012.

"(3) Claimant called the employer in October 2012 and left a message asking if there was further employment. The employer did not receive her message or return her call. Claimant did not make any additional attempts to contact the employer regarding further employment."

The board then announced the conclusions it was reaching based on those findings.

"[W]hen claimant last worked in August 2012, she and [Beckner] had agreed there might be continuing work available for claimant in October. Claimant understood and expected to return to work in October. Because the employer suggested there might be work in October, and did not say it would contact claimant, * * * the onus was on claimant to follow through and let the employer know she was willing to return to work in October, rather than assuming that the employer's failure to return her telephone message was intentional or meant there was no work. The work separation occurred in this case, not because the employer was unwilling to allow claimant to continue working, but because claimant failed to communicate her willingness to return to work. Claimant's work separation was a quit."

(Citations omitted.) The board further concluded that claimant had quit work without good cause:

"To the extent claimant quit work because the employer temporarily laid her off work, claimant did not show she had good cause to quit. Claimant expected to return to work in October based on her communications with the employer's owner, and had the reasonable alternative of continuing

additional evidence in the record, she found Beckner's testimony more persuasive than claimant's. Ultimately, the ALJ concluded that claimant voluntarily quit work without good cause at the end of August 2012.

to work for the employer until it severed the employment relationship. Claimant also had the reasonable alternative of attempting to contact the employer again when the employer did not return her call."

On review, claimant contends, in part, that the board's conclusion—that claimant voluntarily quit her employment without good cause—is not supported by substantial evidence and substantial reason. In particular, claimant asserts, "Because the employer-employee relationship had already been severed in August [2012], the [board's] conclusion that she voluntarily quit in October 2012 does not comport with substantial reason and is error." In addressing that contention, we review the board's factual findings for substantial evidence, which exists when "the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c); *see Hamilton v. Pacific Skyline, Inc.*, 266 Or App 676, 680, 338 P3d 791 (2014) (the "substantial reason requirement inheres in our substantial evidence standard of review under ORS 183.482(8)(c)"). "In determining whether the board's order is supported by substantial reason, we consider whether that order articulates the reasoning that leads from the facts found to the conclusions drawn." *Walker v. Providence Health System Oregon*, 254 Or App 676, 686, 298 P3d 38, *rev den*, 353 Or 714 (2013) (internal quotation marks omitted). Thus, on review, we consider whether the board articulated a rational connection between factual findings that the record supports and the board's ultimate legal conclusion—that claimant quit her employment without good cause. We conclude that it did not.

The major difficulty with the board's order is that it is internally inconsistent regarding the point in time at which claimant voluntarily left work. On one hand, the board made a finding that claimant stopped working at the end of August 2012. The board stated that employer "employed claimant from July 17, 2012 to August 30, 2012," indicating that the employer-employee relationship ended in August 2012. Further, the board found that, "[a]lthough claimant did not perform work for the employer after August 2012, she expected to *return* to work for the employer in October 2012." (Emphasis added.) That use of the word "return"—like the board's finding that employer employed claimant only

through August 30—indicates that claimant had stopped working for employer *before* October 2012. Indeed, part of the board's order can fairly be read to encompass a finding that employer laid claimant off at the end of August, as it suggests that claimant should have made further efforts in October even though employer had earlier "temporarily laid her off work."

Elsewhere in the order, however, the board suggests that—despite its finding that claimant stopped working at the end of August—the actual separation from work did not occur until October 2012. Specifically, the board explained,

"Because the employer suggested there might be work in October, and did not say it would contact claimant, the implication was that claimant would contact the employer in October to inquire about work. Thus, when the employer failed to return claimant's telephone message, the onus was on claimant to follow through and let the employer know she was willing to return to work in October * * *. *The work separation occurred in this case, not because the employer was unwilling to allow claimant to continue working, but because claimant failed to communicate her willingness to return to work.* Claimant's work separation was a quit."

(Emphasis added.) The only referenced failure to communicate occurred in October; the board does not suggest that there was some other point in time at which claimant should have repeated her efforts to contact employer. Later in the order, the board again emphasized its view that claimant should have persisted in attempting to reach employer in October, and her failure to do so showed that she did not have good cause to quit. In other words, the board seems to suggest both that claimant stopped working in August and also that, because claimant did not call more than once to attempt to regain employment in October 2012, she voluntarily quit without good cause in October.

Thus, the board's order appears to encompass inconsistent determinations—it seems to have found both that claimant stopped working at the end of August and that she voluntarily left work in October. But the board has not explained how both of those things can be true. To the contrary, it seems apparent that, if claimant had stopped

working at the end of August, she could not later quit work in October. And if she did not quit working until October, she must still have been working up until that point. Relatedly, the board's order does not explain the apparent tension that arises if claimant's separation from work did not occur until October, given that her benefits were retroactively denied back to September 2, 2012.

Those unexplained inconsistencies in the board's order demonstrate that, at the very least, the order is not supported by substantial reason. *See Hamilton*, 266 Or App at 682 (holding that an order was not based on substantial reason when the board failed to show how "the facts that it identifies connect to its conclusion"); *Federal Express Corp. v. Estrada*, 275 Or App 400, 407, 364 P3d 25 (2015) (order that included "inconsistent factual findings and [did] not include a rational explanation of how those findings logically lead to its conclusion" lacked substantial reason). Accordingly, we reverse and remand. *See id.* (reversing and remanding order that lacked substantial reason).

Reversed and remanded.