196 June 12, 2024 No. 398

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of Luis F. Nava,
Claimant.

LUIS F. NAVA,
*Petitioner,*

*v.*

SAIF CORPORATION
and Portland Window Co Inc.,
*Respondents.*

Workers' Compensation Board
1904777; A178706

Argued and submitted January 10, 2024.

James S. Coon argued the case for petitioner. Also on the briefs was Thomas, Coon, Newton & Frost.

Michelle L. Shaffer argued the cause and filed the brief for respondents.

Theodore P. Heus and Quinn & Heus, LLC, filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Claimant seeks judicial review of a Workers' Compensation Board order denying a penalty and attorney fee under ORS 656.262(11)(a). ORS 656.262(11)(a) requires an insurer to pay a penalty and attorney fee if, as relevant here, the insurer unreasonably delayed compensation. In this case, claimant argued that SAIF unreasonably delayed compensation for his meniscus tear, when it failed to modify its notice of acceptance upon receipt of an independent medical examination (IME) report that clearly identified the meniscus tear as caused by his work injury, instead waiting until claimant filed an omitted condition claim. The board agreed with claimant that SAIF was obligated to modify its notice of acceptance upon receipt of the IME report, under ORS 656.262(6)(b)(F), which provides, "The notice of acceptance shall * * * [b]e modified by the insurer or self-insured employer from time to time as medical or other information changes a previously issued notice of acceptance." The board concluded that SAIF had a legitimate doubt as to the existence of such an obligation, however, such that SAIF did not act unreasonably, and therefore denied a penalty and attorney fee.

On judicial review, claimant challenges the board's penalty-and-fee ruling, arguing that SAIF did not have a legitimate doubt as to its obligation and that the board should have awarded a penalty and attorney fee. Claimant's position is supported by the Oregon Trial Lawyers Association as *amicus curiae*. In response, SAIF defends the board's decision to deny a penalty and attorney fee but disagrees with the board's construction of ORS 656.262(6)(b)(F). As described below, we agree both with the board's construction of ORS 656.262(6)(b)(F) and with the board's ultimate decision not to award a penalty and fee under ORS 656.262(11)(a). Accordingly, we affirm.

## FACTS

The relevant facts are undisputed. In March 2017, claimant fell at work, injuring his knee, and filed a workers' compensation claim. A week later, claimant's attending physician, Dr. Reichle, diagnosed claimant as having a left knee sprain, left knee contusion, chest wall contusion, and left

knee lateral meniscus tear. He recommended that claimant consult a surgeon about the meniscus tear.

In late March 2017, SAIF accepted claimant's left knee sprain and chest wall contusion as disabling compensable injuries. The notice of acceptance did not mention claimant's meniscus tear.

In May 2017, claimant saw a surgeon regarding his meniscus tear. The surgeon recommend surgery. In late July 2017, claimant underwent a meniscectomy for what was described in the surgical report as "a complex, degenerative lateral meniscus tear." SAIF paid for the surgery.

In November 2017, claimant was deemed medically stationary by his attending physician. SAIF closed the claim in December 2017, without any award of permanent disability. The accepted conditions were listed as left knee strain and chest contusion. Again, no mention was made of the meniscus tear.

In March 2018, claimant filed an aggravation claim regarding his left knee. That led to Dr. Staver performing an IME at SAIF's request. Staver diagnosed a traumatic injury with "initial MRI evidence of a lateral meniscus tear." When SAIF asked whether the July 2017 surgical report indicated an acute or degenerative tear, Staver responded that, although the term "degenerative" had been used to describe the tear, "the correlation of the injury, [claimant's] physical findings and the MRI findings *definitely* indicate this lateral meniscal tear was *directly related* to the injury of March 13, 2017." (Emphases added.) Staver acknowledged that he did not have "a film of the intra-articular findings" and had "only the surgeon's description to go on." He continued, "[H]owever, again, in reviewing the entire medical record, it is my opinion that the relationship of the tear, as noted, is compatible with the nature of the injury, the patient's complaints that were specifically related to the lateral joint line of the left knee." Staver further opined that the recent worsening related to the initial injury, noting that degenerative changes often occur following a meniscectomy, and that claimant's work injury continued to represent a material contributing cause of his need for treatment.

SAIF received the IME report in May 2018. In claimant's view, at that point, SAIF was obligated to modify its acceptance notice to add the meniscus tear as a compensable condition. SAIF did not do so. Instead, in October 2018, SAIF denied claimant's aggravation claim on the ground that the accepted knee condition—a knee sprain—had not worsened.

Claimant, who had not previously been represented by an attorney, obtained counsel. On April 4, 2019, claimant's attorney filed an omitted condition claim for a left knee lateral meniscus tear. Without conducting any further investigation, SAIF accepted the claim on April 23, 2019. SAIF then issued an updated notice of acceptance at closure, adding the meniscus tear as an accepted condition and awarding permanent disability benefits for that condition. The amount of permanent disability benefits was later increased after an arbiter examination.

Claimant requested a hearing before an administrative law judge (ALJ) to determine whether SAIF had unreasonably delayed compensation, such that a penalty and attorney fee should be awarded under ORS 656.262(11)(a). Claimant argued that, under ORS 656.262(6)(b)(F), SAIF was obligated to modify its notice of acceptance upon receipt of the IME report and, as a consequence of failing to do so, unreasonably delayed paying permanent partial disability compensation. Relying on existing board case law, the ALJ rejected that construction of ORS 656.262(6)(b)(F) and did not award a penalty and fee under ORS 656.262(11)(a).

The board unanimously affirmed the ALJ's decision not to award a penalty and fee under ORS 656.262(11)(a), but it split 3-2 on the statutory construction issue. The majority agreed with claimant that, under ORS 656.262(6)(b)(F), SAIF had been required to modify its acceptance notice "upon receipt of unrebutted medical evidence establishing compensability of a condition after the initial acceptance," even though claimant had not filed a new or omitted condition claim. Two board members disagreed with that construction of ORS 656.262(6)(b)(F) and indicated that they would follow the reasoning articulated in *Ernest*

*R. Lyons*, 69 Van Natta 688, 694 (2017), and require claimants to request acceptance of a new or omitted condition. All five board members agreed, however, that SAIF should not be required to pay a penalty and attorney fee in this case, regardless of which construction was correct. The majority reasoned that SAIF had not acted unreasonably, because, given the state of the law, SAIF had a legitimate doubt as to whether ORS 656.262(6)(b)(F) required it to modify its acceptance notice upon receipt of the IME report. The concurring board members reasoned that SAIF had timely modified its acceptance notice after claimant filed an omitted condition claim, which was all that it was required to do.

Claimant seeks judicial review, challenging the board's decision not to award a penalty and attorney fee under ORS 656.262(11)(a).

## ANALYSIS

To determine whether the board erred by denying a penalty and attorney fee under ORS 656.262(11)(a), we must first address whether ORS 656.262(6)(b)(F) required SAIF to modify its acceptance notice upon receipt of the IME report. That presents a question of statutory construction, which is a question of law that we review for legal error. *See SAIF v. Ramos*, 252 Or App 361, 374, 287 P3d 1220 (2012) (so reviewing). We follow our usual method of statutory construction. *Walker v. Providence Health System Oregon*, 254 Or App 676, 683, 298 P3d 38, *rev den*, 353 Or 714 (2013). Seeking to discern the legislative intent, we consider the statutory text in context and any useful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 656.262 is a lengthy statute that addresses various aspects of claims processing and payment of compensation on workers' compensation claims. This case concerns subparagraph (6)(b)(F), which provides,

> "The notice of acceptance shall * * * [b]e modified by the insurer or self-insured employer from time to time as medical or other information changes a previously issued notice of acceptance."

The parties generally agree that because that provision uses "shall," it imposes some mandatory duty on insurers and

that, fundamentally, the action that the statute requires insurers to take is modifying notices of acceptance. They disagree about what kind of modifications the provision requires insurers to make and what triggers that duty.

Claimant contends—and the board majority agreed—that ORS 656.262(6)(b)(F) requires an insurer to modify its notice of acceptance to accept new or omitted conditions "upon receipt of unrebutted medical evidence establishing compensability of a condition after the initial acceptance." Claimant argues that, in this case, the IME report triggered that duty, requiring SAIF to modify its notice of acceptance to add the meniscus tear as a compensable condition. SAIF disagrees. SAIF argues—and the concurring board members agreed—that ORS 656.262(6)(b)(F) imposes no such obligation and that the legislature intended to make claimants, not insurers, responsible for identifying and requesting acceptance of new and omitted conditions. In SAIF's view, ORS 656.262(6)(b)(F) merely reiterates the obligation of insurers to update acceptance notices at various points in time as required by other statutes and rules.

We begin with the text. On its face, ORS 656.262(6) (b)(F) requires ("shall") an insurer to modify a notice of acceptance "from time to time as medical or other information changes a previously issued notice of acceptance." We understand "from time to time" to mean occasionally. *See Florey v. Meeker*, 194 Or 257, 286, 240 P2d 1177 (1952) (interpreting "from time to time" in a will to mean "'[a]s occasion may arise; at intervals; now and then; occasionally'" (quoting 37 CJS 1384 (1943))). The text also identifies the occasion for the action—when "medical or other information changes a previously issued notice of acceptance." ORS 656.262(6)(b)(F).

SAIF argues that, by its nature, "the phrase 'from time to time' is not restrictive as to any particular period," *Florey*, 194 Or at 287, and is therefore too vague to be read as imposing on insurers any particular obligation to modify a notice of acceptance. We disagree. The will at issue in *Florey* used the phrase "from time to time" without relation to any triggering event, such that it was reasonably understood in context to mean "at any time." *Id.* at 286-87. By contrast, the legislature specified the event that triggers the obligation

in ORS 656.262(6)(b)(F): "as medical or other information changes a previously issued notice of acceptance." Although that language admittedly is not a model of clarity, it is clear enough to establish that the legislature intended the receipt of "medical or other information [that] changes a previously issued notice of acceptance" to be the triggering event for an insurer's obligation to modify a notice of acceptance.

We next consider context. As SAIF, the ALJ, and the concurring board members have emphasized, three other provisions of the workers' compensation statutes, including two other paragraphs of ORS 656.262, put the onus on claimants to alert the insurer to new or omitted medical conditions.

ORS 656.262(6)(d) requires claimants to notify insurers in writing if they believe that a condition has been incorrectly omitted from the notice of acceptance, and it prohibits claimants who have not done so from alleging the de facto denial of the omitted condition in a subsequent claim hearing:

> "An injured worker who believes that a condition has been incorrectly omitted from a notice of acceptance, or that the notice is otherwise deficient, first must communicate in writing to the insurer or self-insured employer the worker's objections to the notice pursuant to ORS 656.267. The insurer or self-insured employer has 60 days from receipt of the communication from the worker to revise the notice or to make other written clarification in response. A worker who fails to comply with the communication requirements of this paragraph or ORS 656.267 may not allege at any hearing or other proceeding on the claim a de facto denial of a condition based on information in the notice of acceptance from the insurer or self-insured employer. Notwithstanding any other provision of this chapter, the worker may initiate objection to the notice of acceptance at any time."

The procedure for a claimant to notify the insurer of an omitted condition, or a new condition, is provided in ORS 656.267(1), which states:

> "To initiate omitted medical condition claims under ORS 656.262(6)(d) or new medical condition claims under this section, the worker must clearly request formal written acceptance of a new medical condition or an omitted

medical condition from the insurer or self-insured employer. A claim for a new medical condition or an omitted condition is not made by the receipt of medical billings, nor by requests for authorization to provide medical services for the new or omitted condition, nor by actually providing such medical services. *** Notwithstanding any other provision of this chapter, the worker may initiate a new medical or omitted condition claim at any time."

Finally, ORS 656.262(7)(a) reiterates that a claimant who has not given the notice required by ORS 656.262(6)(d) and ORS 656.267(1) may not allege the de facto denial of a new or omitted condition in a subsequent claim hearing:

"After claim acceptance, written notice of acceptance or denial of claims for aggravation or new medical or omitted condition claims properly initiated pursuant to ORS 656.267 shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the insurer or self-insured employer receives written notice of such claims. A worker who fails to comply with the communication requirements of subsection (6) of this section or ORS 656.267 may not allege at any hearing or other proceeding on the claim a de facto denial of a condition based on information in the notice of acceptance from the insurer or self-insured employer."

Based on those statutory provisions, SAIF argues that the legislature intended claimants, not insurers, to be responsible for identifying new and omitted conditions and did not intend insurers to have any obligation regarding new or omitted conditions until and unless a claimant gives written notice. The concurring board members agree with SAIF, and, in fact, not very long ago, the board itself agreed. In 2017, the board stated in *Lyons*, 69 Van Natta at 694, that "ORS 656.262(6)(b)(F) neither provides an independent means for the resolution of claim processing issues arising from an insurer's acceptance nor transcends the statutory process mandated by ORS 656.262(6)(d) and ORS 656.267(1) for a claimant to object to a Notice of Acceptance and seek acceptance of an allegedly omitted medical condition."

In SAIF's view, various provisions of the workers' compensation statutes require insurers to respond to claims, requests, and objections received from claimants.

For example, as just described, when a claimant gives written notice of an omitted condition, ORS 656.262(6)(d) gives the insurer 60 days "to revise the notice or to make other written clarification in response," and ORS 656.262(7)(a) reiterates that 60-day deadline. Another example is ORS 656.277(1)(a), which gives an insurer 14 days to respond to a claimant's request to reclassify an accepted injury from nondisabling to disabling. SAIF argues that, in the context of those other statutory provisions, ORS 656.262(6)(b)(F) simply clarifies that insurers must modify their notices of acceptance to conform to their decisions on such claims, requests, and objections—as opposed to requiring insurers to modify notices of acceptance based on new medical information even when the claimant has not made a request.

SAIF's contextual argument has appeal. The cited statutory provisions plainly envision claimants giving insurers written notice of new or omitted conditions and protects insurers from allegations of de facto denial in the absence of such notice. *See* ORS 656.262(6)(d) (regarding de facto denial); ORS 656.262(7)(a) (regarding de facto denial); ORS 656.267(1) (requiring the claimant to make "a clear request for formal written acceptance" of a new or omitted condition). Indeed, we agree with SAIF that, when the legislature enacted ORS 656.262(6)(d) and (7)(a) in 1995, it intended claimants to be solely responsible for identifying new and omitted conditions and bringing them to insurers' attention. The difficulty for SAIF is that the legislative history does not end in 1995. Two years later, in 1997, the legislature enacted ORS 656.262(6)(b)(F), and, based on its legislative history, the purpose of that enactment was to shift some of the responsibility for identifying new and omitted conditions back to insurers. Because the legislative history is important to our analysis, we describe it in some detail.

In 1995, the legislature passed Senate Bill (SB) 369, a bill that made numerous changes to the workers' compensation statutes. Or Laws 1995, ch 332. Most importantly for present purposes, SB 369 added the text codified as ORS 656.262(6)(d) and (7)(a).[1] As described in a bill summary

_____

[1] As originally enacted, ORS 656.262(6)(d) and (7)(a) contained both their current text, as previously quoted, and additional text that was moved to ORS 656.267(1) in 2001. Or Laws 2001, ch 865, §§ 7, 10. The 2001 amendments

presented by Senator Gene Derfler, one of the bill's sponsors, those provisions were proposed in response to case law holding that an insurer's failure to expressly accept or deny each condition for which treatment was requested or provided would be "deemed to be a denial" of the compensability of the unmentioned conditions.[2] Exhibit A, Senate Committee on Labor and Government Operations, SB 369, Jan 30, 1995, at 13-14 (Sponsor Summary of SB 369). Disliking that approach, the legislature sought to establish "a procedure for a worker to challenge the completeness of a notice of acceptance" or get "an insurer to consider the compensability of a new medical condition" and to prevent workers from alleging denial of a specific condition if they failed to follow that procedure. *Id.*

Two years later, in 1997, the legislature passed House Bill (HB) 2971. Or Laws 1997, ch 605. As originally drafted, HB 2971 had a singular purpose: to overrule *Messmer v. Deluxe Cabinet Works*, 130 Or App 254, 881 P2d 180 (1994), *rev den*, 320 Or 507 (1995), a case holding that, once an insurer closed a claim and awarded permanent disability for a given condition, the insurer was precluded from later litigating the compensability of that condition. The legislature had tried to "overrule" *Messmer* in 1995 as part of SB 369 (1995). Sponsor Summary of SB 369, at 14. However, we concluded in *Deluxe Cabinet Works v. Messmer*, 140 Or App 548, 550, 915 P2d 1053, *rev den*, 324 Or 305 (1996), that the 1995 legislation had failed to achieve that goal. The legislature therefore tried again in 1997. Insurers advocating for HB 2971 explained that allowing insurers to contest the compensability of conditions after claim closure would avoid the need for pre-closure litigation of every possibly compensable condition, which was beneficial because

---

redistributed the text enacted in 1995, but those amendments did not change the contents of the three sections, considered together, in any way material to our analysis. That is, we do not understand the 2001 amendments to have changed the framework that was established in 1995 and, as we will discuss, amended in 1997.

    [2] *See, e.g.*, *SAIF v. Blackwell*, 131 Or App 519, 522, 886 P2d 1028 (1994) (stating that medical "reports showing that claimant was in need of medical treatment for knee conditions other than knee strain were 'claims,'" and the insurer's "conduct in failing to expressly accept or deny the claims within the required statutory period were de facto denials of those claims").

many conditions never result in post-closure medical costs. Testimony, House Committee on Labor, HB 2971, April 22, 1997, Ex B (statement of SAIF Corporation representative Chris Davie).

HB 2971 provided an opening, however, to revisit the 1995 legislation and do some renegotiating. Robert Moore, testifying on behalf of a group of claimants'-side attorneys, asserted that the 1995 enactment of ORS 656.262(6)(d) and (7)(a), which required claimants to request acceptance of new or omitted conditions, combined with HB 2971's proposed rejection of *Messmer*, would create a situation in which claimants would not know until closure which conditions had actually been accepted. Tape Recording, House Committee on Labor, HB 2971, Apr 22, 1997, Tape 66, Side A (testimony of Robert Moore, Oregon Workers' Compensation Attorneys). According to SAIF's representative, SAIF's practice with respect to initial notices of acceptance was to try to accept all conditions that were compensable according to the information available at the time, which usually involved going through the medical report and listing all accepted conditions. Tape Recording, House Committee on Labor, HB 2971, Apr 22, 1997, Tape 66, Side A (statement of Chris Davie, SAIF). The problem, according to Moore, was when new conditions arose after the initial acceptance or when omitted conditions were discovered after the initial acceptance.

Moore explained that, under existing law, insurers who received medical reports identifying clearly compensable new or omitted medical conditions related to an accepted claim had no obligation to update the notice of acceptance unless and until the claimant made a request. Tape Recording, House Committee on Labor, HB 2971, Apr 22, 1997, Tape 66, Side A (statement of Robert Moore). That was problematic, Moore argued, because unrepresented claimants had no motivation to give notice of a new or omitted condition if the workers' compensation insurer was already paying their medical bills and, further, often either did not receive the medical reports or did not understand their significance. *Id*. As a result, unrepresented claimants often failed to give insurers notice of new or omitted conditions,

and those conditions were then not included in the closure notice, because a closure notice lists only those conditions that have been expressly accepted or expressly denied. *Id*.

After Moore raised that concern, the Management Labor Advisory Committee (MLAC)[3] proposed changes to HB 2971. One of those changes was the addition of what is now ORS 656.262(6)(b)(F). Tom Mattis, representing the Workers' Compensation Division, told the Senate Committee on Rules and Elections that the final version of HB 2971 not only would overrule *Messmer* but would also address what appears to be the same concern raised by Moore, which Mattis described as follows:

> "[T]he current statute places almost the full burden of clarifying a claim acceptance on the worker. Nothing in the current statute requires an insurer to update the claim acceptance when more is known about the worker's condition. Most workers assume that everything is 'under control,' as long as they have an accepted claim and the medical bills are paid. Then, if their claim is closed with less permanent disability than they expected, they may be very surprised to learn that only some of their conditions were ever accepted."

Testimony, Senate Committee on Rules and Elections, HB 2971, June 11, 1997, Ex AA, at 1 (testimony of Tom Mattis, Deputy Administrator, Workers' Compensation Division (boldface and underlining omitted; formatting modified)). Mattis explained that, as amended, "HB 2971 requires insurers to clarify the compensable conditions" in three ways: (1) by "issu[ing] updates when they receive new information;" (2) by issu[ing] a revised Notice of Acceptance prior to claim closure;" and (3) "[i]f a condition should have been included before claim closure, but wasn't found compensable until after the claim was closed," by reopening the claim. *Id*. at 2. The legislature passed the bill as amended. Or Laws 1997, ch 605.

---

[3] "MLAC is a 10-member committee appointed by the Governor, with five members representing labor and five representing employers. ORS 656.790(1). The committee reports findings and recommendations to the Legislative Assembly on various matters. ORS 656.790(3)." *Nancy Doty, Inc. v. WildCat Haven, Inc.*, 297 Or App 95, 111 n 8, 439 P3d 1018, *rev den*, 365 Or 556 (2019).

The upshot of the foregoing legislative history is that the 1995 legislature enacted statutory provisions that made claimants solely responsible to identify new and omitted medical conditions and bring them to the insurer's attention, but then the 1997 legislature sought to shift some of that burden back to insurers by enacting ORS 656.262(6)(b)(F).

The legislative history thus confirms our understanding of the text and overcomes the ambiguity created by the coexistence of ORS 656.262(6)(d) and (7)(a) and ORS 656.267(1) with ORS 656.262(6)(b)(F). Like the board, we construe ORS 656.262(6)(b)(F) as requiring an insurer to modify the notice of acceptance when it receives unrebutted medical or other information that is incompatible with the existing notice of acceptance. As applied here, that means that, when SAIF received unrebutted medical evidence clearly establishing the compensability of claimant's meniscus tear, SAIF was required to modify its notice of acceptance to include the meniscus tear as a compensable condition, even though claimant had not filed an omitted condition claim.

Having concluded that the board correctly construed ORS 656.262(6)(b)(F), we turn to the issue of legitimate doubt. The board determined that, even though ORS 656.262(6)(b)(F) required SAIF to modify its notice of acceptance upon receiving the IME report, SAIF did not act "unreasonably" in failing to do so, because SAIF had legitimate doubt as to what ORS 656.262(6)(b)(F) required. ORS 656.262(11)(a) provides for an insurer to pay a penalty and attorney fee only when the insurer "unreasonably delays or unreasonably refuses to pay compensation, attorney fees or costs, or unreasonably delays acceptance or denial of a claim." "An insurer 'unreasonably delays' payment of compensation for purposes of ORS 656.262(11) if, at the time compensation is due, the insurer had no legitimate doubt regarding its liability for the compensation." *Snyder v. SAIF*, 287 Or App 361, 367, 402 P3d 743 (2017) (some internal quotation marks omitted). Based on its conclusion that SAIF had legitimate doubt and therefore did not act unreasonably, the board did not impose a penalty and fee under ORS 656.262(11)(a).

We review the "legitimate doubt" determination for substantial evidence and substantial reason. *Walker*, 254 Or App at 686. "Whether an insurer has a legitimate doubt or acts unreasonably must 'be considered in the light of all the evidence available to the insurer.'" *Snyder*, 287 Or App at 367 (quoting *Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988)). The inquiry also takes into consideration the state of the law when the compensation is due, including statutes, rules, and, to the extent that the relevant provisions are ambiguous, case law interpreting them. *Walker*, 254 Or App at 688 (concluding that the insurer lacked a legitimate doubt where the relevant statute unambiguously and indisputably required a particular action, notwithstanding the lack of case law, but recognizing that case law could create a legitimate doubt in some circumstances, "such as where applicable statutes are reasonably susceptible to competing interpretations"); *Providence Health System v. Walker*, 252 Or App 489, 507, 289 P3d 256 (2012), *rev den*, 353 Or 867 (2013) (considering board case law in determining whether an insurer had legitimate doubt).

We agree with the board that SAIF had a legitimate doubt in this case. As described, the text of ORS 656.262(6)(b)(F) is not a model of clarity, and other provisions of the workers' compensation law—including two other paragraphs in the same statute—make its meaning even less clear. It is only upon close examination of nearly 30-year-old legislative history that ORS 656.262(6)(b)(F)'s meaning becomes apparent and, until this decision, neither we nor the Supreme Court had ever construed it. Moreover, at the time SAIF received claimant's IME report in 2018, the board had only a year earlier issued its decision in *Lyons*, 69 Van Natta at 694, which reasonably would have been understood as supporting SAIF's reading of ORS 656.262(6)(b)(F).[4]

Under the circumstances, the board's "legitimate doubt" determination is supported by substantial evidence and substantial reason. We disagree with claimant that

_____

[4] In its decision in this case, the board majority distinguished its *Lyons* holding on the ground that there was no initial notice of acceptance when the claimant sought acceptance of an additional condition, but readers would not necessarily have foreseen that future distinction.

the board's explanation falls short on the substantial reason requirement. Viewed as a whole, the order adequately explains its reasoning.

Affirmed.